IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| ANDERSON EXCAVATING, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>WEISS WORLD L.P. and THE MONONGALIA COUNTY COAL COMPANY,<br><br>*Defendant.* | Civil Action No. 22-cv-0512<br><br>Hon. William S. Stickman IV |

**OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This case presents a novel issue of Pennsylvania law: whether an unpaid contractor can impose a mechanics' lien on a surface owner's property interest when the unpaid contractor's outstanding debt stems from a contract with, and work performed for, the owner of a *subsurface* property interest. Plaintiff Anderson Excavating LLC ("Anderson") filed a Complaint in Action Upon Mechanics' Lien Claim ("Complaint") against Defendant Weiss World L.P. ("Weiss World") to enforce a mechanics' lien under Pennsylvania's Mechanics' Lien Law of 1963, 49 P.S. § 1101 *et seq.*, for work it allegedly performed for the owner of the subsurface mineral rights on Weiss World's surface estate. Anderson alleges that it was not paid for labor, services, and/or materials provided under an Intermittent Work Contract amounting to $392,788.80 plus interest at the legal rate and costs between it and Monongalia County Coal Company ("MCCC"). (ECF No.

1-2, p. 6).[1] Notably, MCCC's only interest in the property was in the subsurface rights, which were severed from the surface rights "by deed dated October 18, 1911, and recorded in Greene County Deed Book 222, Page 340. Ex. A." (ECF No. 7, p. 6). Anderson's Complaint is asserted solely against Weiss World's fee simple, and any other interest Weiss World may hold in such property. (ECF No. 1-2, p. 6). Weiss World filed a Motion to Dismiss claiming that Anderson failed to state a claim upon which relief can be granted. (ECF No. 7). It argues that Pennsylvania's Mechanics' Lien Law cannot be construed to permit a lien upon the surface rights for the failure of the holder of the subsurface rights to pay its contractor. The Court agrees. Thus, for the reasons set forth below, the Court will grant the Motion to Dismiss.

## I. FACTUAL BACKGROUND

In 1911, the coal rights beneath Parcel ID 0904-104-A ("Subject Property"), which consists of approximately 99.62 acres located in Greene County, were transferred to MCCC's predecessor in interest by deed. (ECF No. 8, p. 2). Sixty years later, in 1971, the Weiss Family purchased a 100-acre parcel, which included the surface rights to the Subject Property. (*Id.* at p. 1). Oliver and Joanne Weiss transferred the Subject Property to Weiss World by deed on December 20, 2000. The deed specifically stated that it did not convey any interest in the subsurface mineral rights. (ECF No. 1-2, p. 58)

On January 23, 2015, MCCC hired Anderson pursuant to an Intermittent Work Contract requiring Anderson to furnish the requisite "labor, equipment, and/or materials to provide surface work to assist [in] mine management." (*Id.* at p. 32). Specifically, Anderson's labor primarily

---

[1] Anderson also named the bankrupt MCCC as a defendant. It pleads, however, that "Anderson's claim against [MCCC] is the subject of bankruptcy proceedings, and thus Anderson is not pursuing its claim against [MCCC] in this Complaint and action at this time." (ECF No. 1-2, ¶13, n.1). Consequently, Anderson does not plead any causes of action against MCCC. MCCC will be dismissed as a defendant.

2

consisted of "clearing and grubbing, topsoil stripping, installation of drainage features (including collection ditches, sumps, a sedimentation pond, an auger bore and drainage culverts), bulk excavation (including access road development and aggregate placement on roadways and pad areas developed), guardrail installation and sediment/mulching disturbed areas." (*Id.* at p. 18).

On September 15, 2017, Weiss World entered into an Easement Agreement ("Easement") with MCCC, allowing MCCC to "access 2.7 acres of the Subject Property to construct a Storage Area and Sediment Pond." (ECF No. 12, p. 5). Under the provisions of the Easement, MCCC was to use a Common Use Road to access the Subject Property. (ECF No. 7-3, p. 2). However, the Pennsylvania Department of Environmental Protection refused to approve MCCC's request to use the road. (*Id.* at p. 3). Because the Common Use Road was the sole means by which it could enter the Subject Property, MCCC sought injunctive relief from the Court of Common Pleas of Greene County at Docket No. ML-46-2020 in order to gain access to its subsurface coal rights underneath the Subject Property. (ECF No. 7-3). On June 15, 2018, against strong opposition from Weiss World,[2] the Court of Common Pleas granted a preliminary injunction in favor of MCCC, giving it the right to construct an access road across the Subject Property to enter its various ancillary coal mining facilities. (*Id.* at p. 6).

On or about September 20, 2019, Anderson completed performance under the Intermittent Work Contract. (ECF No. 1-2, p. 5). MCCC sought bankruptcy protection with an alleged outstanding balance to Anderson of $392,788.70. Unable to obtain payment from MCCC,

---

[2] The Greene County Common Pleas Court noted, "[Weiss World has] refused to give [MCCC] access across the Property citing the Easement agreement and their familial attachment to the Property in its current state.... The Court was informed on June 5, 2018, that the parties were unable to reach an agreement." (ECF No. 7-3, p. 3). The proceedings in that court make very clear that Weiss World did not approve of MCCC's use of their property to access its subsurface rights and strenuously objected to its efforts to do so.

3

Anderson filed its Complaint in the Court of Common Pleas of Greene County. (ECF No. 1-2). The case was then removed to this Court in March 2022. (*Id.* at p. 6). Anderson is seeking to enforce a mechanics' lien against Weiss World's interest in the Subject Property on the basis that it was a subcontractor to Weiss World as defined under 49 P.S. § 1201(5). (*Id.*).

## II.     STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a

plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule. A district court *may* consider the following: (1) exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); (2) documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit*, 998 F.2d at 1196; and (3) matters of public record, *Pension Benefit*, 998 F.2d at 1196.

### III.  ANALYSIS

Weiss World argues that Anderson's "Complaint must be dismissed with prejudice … and the lien asserted against Weiss World stricken" because Anderson's Complaint has failed to state a claim. (ECF No. 7, p. 3). In opposition, Anderson argues that Weiss World's Motion to Dismiss should be denied on multiple grounds. First, Anderson claims that the Court is not permitted to take judicial notice of or consider any of the facts or allegations set forth in the 1911 deed, the 2000 deed, the Greene County Court of Common Pleas order granting MCCC a preliminary injunction, or the Easement Agreement between Weiss World and MCCC. (ECF No. 11, p. 4). Second, it contends that Weiss World consented to Anderson's improvements on the Weiss World Property, opening itself up to the possibility of a mechanics' lien. (*Id.* at p. 6). Finally, Anderson argues that it can be viewed as a subcontractor to Weiss World, rather than merely to MCCC. (*Id.*

at p. 9). After careful consideration, the Court holds that Weiss World's motion must be granted and the case dismissed because there is no legal basis for the mechanics' lien filed by Anderson.

**A. The Court may consider certain facts beyond the Complaint.**

Anderson argues that the Court cannot properly consider documents that are not attached or referred to in its Complaint. (ECF No. 11, p. 4). Weiss World contends that the Court may consider the 1911 Deed, the 2000 deed, the 2017 Easement, and the 2018 Greene County Court of Common Pleas Opinion and Order, notwithstanding their omission from Anderson's Complaint.

By Anderson's own admission, there is no bar to the Court's consideration of documents attached to the Motion to Dismiss if they "are indisputably authentic or constitute public records." (ECF No. 11, p. 4 (citing *Daniel v. Baritz*, 2003 U.S. Dist. LEXUS 7707, at *22 (E.D. Pa. Apr. 30, 2003)). This point is well-established and not open to dispute. The 1911 Deed, the 2000 Deed, and the 2018 Greene County Court of Common Pleas Order and Opinion fall squarely within the category of documents a district court may consider in deciding a Rule 12(b)(6) motion. Weiss World cites to *Pension Benefit Guar. Corp.* for the proposition that the Court must consider the 1911 Deed, which severed the Subject Property's subsurface coal rights from the surface estate, and the 2000 Deed, which created Weiss World, because they are matters of public record to which the public has "unqualified access." *Pension Benefit Guar. Corp.*, 998 F.2d at 1197. The Court agrees. But, as explained above, these documents are not critical to the Court's determination because the *fact* that MCCC, and not Weiss World, owns the subsurface rights is not in dispute. Only the impact of that severance upon Anderson's right to lien Weiss World's surface interest is in dispute.

The Court may also consider the 2018 Greene County Court of Common Pleas Order and Opinion, which granted MCCC injunctive relief allowing it to access its subsurface rights through

6

surface operations on Weiss World's land. The filings in that proceeding, and especially the court's decision, are freely accessible by the public. *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("[D]ocket sheets are public records[ ] of which this court may take judicial notice in deciding a motion to dismiss." (citation omitted)). Thus, the Court may also consider Greene County Court of Common Pleas Order and Opinion in deciding the Motion to Dismiss.

To the extent that the 2017 Easement between Weiss World and MCCC is relevant to the Court's determination, it may also consider it because the Easement is integral to the facts and claims pled in Anderson's Complaint. *Burlington*, 114 F.3d at 1426. The *Burlington* Court found that a "document *integral to or explicitly relied* upon in the complaint may be considered" when ruling on a motion to dismiss. *Id.* Anderson's Complaint states, "Anderson is a Contractor as to [MCCC] as that term is defined under Section 201 of Pennsylvania Mechanics' Lien Law of 1963, 49 P.S § 1201(4); and a Subcontractor as to Weiss World as that term is defined under Section 201 of Pennsylvania Mechanics' Lien Law of 1963, 49 P.S. § 1201(5)." (ECF No. 1-2, p. 6). Anderson's position attempting to tie Weiss World into the relationship between Anderson and MCCC necessarily hinges upon Anderson's interpretation of the importance of the Easement. In other words, as explained below, Anderson alleges that, because Weiss World and MCCC entered into an Easement, an underlying contract was formed such that once MCCC hired Anderson to perform the improvements in question, Anderson became a subcontractor to Weiss World. (*Id.* at 9). Without the Easement, Anderson's argument has no foundation. Thus, if necessary, the Court may consider the 2017 Easement in assessing Weiss World's Motion to Dismiss.

### B. Pennsylvania's Mechanics' Lien Law permits a contractor or subcontractor to impose a lien in certain defined circumstances.

In Pennsylvania, the right of a contractor or subcontractor to file a mechanics' lien is created by statute:

> General Rule. Except as provided under subsection (b), every improvement and the estate or title of the owner in the property shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim, other than amounts determined by apportionment under section 306(b) of this act, shall exceed five hundred dollars ($500).

49 P.S. §1301(a). The critical questions posed by this case are: (1) whether Weiss World's surface rights are the "property" subject to the lien when the contract between Anderson and MCCC related only to MCCC's subsurface rights; and (2) whether Anderson effectuated an improvement to the Subject Property as a contractor or subcontractor of Weiss World. The critical terms are defined by Section 1201 of Pennsylvania's Mechanics' Lien Law:

> The following words, terms and phrases when used in this act shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
>
> (1) **"Improvement"** includes any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.
>
> (2) **"Property"** means the improvement, the land covered thereby and the lot or curtilage appurtenant thereto belonging to the same legal or equitable owner reasonably needed for the general purposes thereof and forming a part of a single business or residential plant.
>
> (3) **"Owner"** means an owner in fee, a tenant for life or years or one having any other estate in or title to property.
>
> (4) **"Contractor"** means one who, by contract with the owner, express or implied, erects, constructs, alters or repairs an improvement or any part thereof or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman. The term also includes an architect or engineer who, by contract with the owner, express or implied, in addition to the preparation of drawings, specifications and contract documents also superintends or supervises any such erection, construction, alteration or repair.

> (5) **"Subcontractor"** means one who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman. The term does not include an architect or engineer who contracts with a contractor or subcontractor, or a person who contracts with a materialman or a person who contracts with a subcontractor not in direct privity of a contract with a contractor.

49 P.S. §1201 (in relevant part). There is no question that Anderson may only impose the subject mechanics' lien if authorized by these terms.

### C. Anderson cannot lien Weiss World's surface estate in the Subject Property because it is distinct from MCCC's subsurface estate.

There is no dispute, and the documents before the Court highlight, that Weiss World owns the surface estate and that MCCC owns the subsurface mineral rights in the Subject Property. Nevertheless, Anderson attempts to lien Weiss World's interest due to MCCC's failure to pay for improvements relating to MCCC's access and exploitation of its subsurface mineral rights. Whether this is permitted by Pennsylvania's Mechanics' Lien law presents a question of first impression which requires an examination of the statutory language in light of long-held principles of Pennsylvania property law.

It is well-established that "Pennsylvania recognizes three separate estates in land which can be held in fee simple separate and distinct from each other: the surface estate, the mineral rights estate and the support estate.[3] *Captline v. Cnty. of Allegheny*, 662 A.2d 691, 692 n.1 (Pa. Cmwlth. 1995). Pennsylvania law is equally clear that the owner of the subsurface estate has the right to access it from the surface. *PBS Coals, Inc. v. Dep't of Transp.*, 206 A.3d 1201, 1211 (Pa.

---

[3] Weiss World's contention that the severance of the mineral estate from its title vitiated its fee simple in the surface estate is, therefore, mistaken.

Commw. Ct. 2019) (quoting *Baker v. Pittsburg, C & W. R. Co.*, 68 A. 1014, 1015 (1908) ("[O]ne who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil so far as it is necessary to carry on his mining operations."), *reversed on other grounds*, 244 A.3d 386 (Pa. 2021). "Thus, 'an express grant of all the minerals and mining rights in a tract of land is by natural implication the grant also of the right to open and work the mine, and to occupy for those purposes as much of the surface as may be reasonably necessary.'" *Id.* (citation omitted). "Under Pennsylvania law, an owner of coal rights has the implied right to use as much of the surface property as necessary for mining operations." *Id.* at 1212 (quoting *Oberly v. H.C. Frick Coke Co.*, 104 A. 864 (Pa. 1918)). Finally, "the right to use as much of the surface as necessary for mining operations, however, must be 'exercised with due regard to the owner of the surface, and its exercise will be restrained within proper limits by a court of equity, if this becomes necessary.'" *Id.* at 1212 (quoting *Chartiers Block Coal Co. v. Mellon*, 25 A. 597 (Pa. 1893)).

It is important to note that there is a stark distinction between what a holder of subsurface rights owns, versus what it can merely use. Pennsylvania law clearly establishes that the owner of subsurface rights holds an estate that is distinct from the owner of the surface rights. The right of the subsurface estate holder to access its estate does not confer any ownership interest in the surface estate. Rather, it confers only a narrow "right to use" a portion of the surface estate to the extent, and only to the extent, necessary to access the subsurface estate. In other words, a subsurface estate holder has a limited easement to access the surface estate. To the extent that there is a dispute over the extent of that easement, it may be examined by a competent court of equity. That is exactly what happened between Weiss World and MCCC.

Pennsylvania's Mechanics' Lien Law permits a lien upon "every improvement **and the estate or title of the owner in the property**." 49 P.S. §1301(a) (in relevant part) (emphasis added). As explained above, Weiss World has no estate or title in the subsurface rights and MCCC has no estate or title in the surface rights beyond the narrow right to use the surface estate for the sole and narrow purpose of access and exploiting its subsurface estate. Thus, the plain language of Section 1301(a) permits a lien only upon MCCC's improvement and its subsurface estate.

The definition of "property" in Section 1201 may present some ambiguity as to the extent of the lien permitted by Section 1301. It defines "property" as "the improvement, *the land covered thereby* and the *lot or curtilage appurtenant thereto* belonging to the same legal or equitable owner reasonably needed for the general purposes thereof and forming a part of a single business or residential plant." The terms "land covered thereby" and "the lot or curtilage appurtenant thereto" are modified by "belonging to the same legal or equitable owner." Thus, the definition of "property" cannot be construed so broadly as to suggest that Section 1301 permits a lien upon the "land covered" by an improvement or the "lot or curtilage appurtenant thereto" where the estate in that surface land is not owned by the owner of the subsurface rights.

A longstanding canon of legal interpretation holds that "[s]tatutes are never presumed to make any innovation in the rules or principles of the common law or prior existing law beyond what is expressly declared in their provisions." *Metropolitan Property and Liab. Ins. Co. v. Ins. Comm'r of Pa.,* 580 A.2d 300, 302 (Pa. 1990). "In the absence of express declaration, the law presumes that the act did not intend to make any changes in the common law, for if the legislature had that design they would have expressed it." *Buradus v. Gen. Cement Prods. Co.,* 48 A.2d 883, 886 (Pa. Super. 1946) (citation omitted). The Court's construction of the pertinent provisions of Pennsylvania's Mechanics' Lien Law is consistent with this canon. The Court reads and interprets

the relevant terms of it within the established and unquestioned common law principles governing Pennsylvania property law. Specifically, that law unequivocally recognizes the possibility of the severance into separate and distinct estates: the surface and subsurface rights in land. The Court's interpretation honors those principles by respecting the divisibility of surface and subsurface estates and insulating the rights and liabilities of one estate from the other.

It is a fundamental legal principle that *nemo dat quod non habet*—nobody can give what he does not have. MCCC would not be permitted to convey any interest or title in the surface to Anderson in connection with its improvement because MCCC has no such interest (beyond its limited right of access). Likewise, Weiss World could convey no interest in the subsurface estate, because only MCCC holds those rights. It is axiomatic that, just as nobody can give what he does not have, nobody can take from another what that person does not possess. Where the surface estate and the subsurface estate have been severed, a contractor or subcontractor retained by the subsurface estate owner may only lien that owner's interest. It cannot lien the separate property of the surface estate owner.[4]

**D. Anderson was not a contractor or subcontractor to Weiss World.**

Anderson's position also fails because it was neither a contractor nor subcontractor to MCCC as those terms are defined at Section 1201 of Pennsylvania's Mechanics' Lien Law. This

---

[4] Courts are also obligated to "construe statutes sensibly and avoid constructions which yield absurd or unjust results." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d. Cir. 2014). Where the surface and subsurface estates are severed, permitting the contractor or subcontractor of a subsurface estate holder to lien the surface estate would be absurd and unjust. A substantial number of Pennsylvania landowners own only the surface estate—with the subsurface estate severed by deed long before the surface owner obtained title. Further, surface estate owners are strangers to the contract between the subsurface owner and *its* contractors. Surface owners are also without the authority to compel the subsurface owner to pay its contractor or subcontractors. It would be fundamentally unjust to subject the surface owner to a lien for the actions of the subsurface owner.

is an independently dispositive issue because Pennsylvania's Mechanics' Lien Law specifically states that "no lien shall be allowed in favor of any person ***other than a contractor or subcontractor***, as defined herein, even though such person furnishes labor or materials to an improvement." 49 P.S. § 1303. For Anderson's Complaint to withstand Weiss World's Motion to Dismiss, it must set forth some basis upon which Anderson can be considered a contractor or subcontractor to Weiss World. It cannot do so.

It is undisputed that Anderson had no contract with Weiss World. Thus, Anderson had no "contract with the owner, express or implied." 49 P.S. § 1201(4). It falls outside the plain-language definition of contractor as defined by statute. Whether Anderson was a subcontractor to Weiss World requires a determination of whether Weiss World had, as a threshold issue, a "contract with the contractor, or [had a] contract with a subcontractor in direct privity of a contract with a contractor." 49 P.S. § 1201(5). Weiss World did not have any contract with MCCC with respect to any of MCCC's alleged improvements. Weiss World was nothing more than the holder of the surface estate in the land upon which MCCC accessed its subsurface estate. There is no contractual link, however remote, between the alleged improvements rendered by Anderson and Weiss World.

Anderson argues that the 2017 Easement Agreement between Weiss World and MCCC provides the basis for its classification as subcontractor to Weiss World. It asserts that, because it was hired by MCCC to perform and did perform some improvements on the Subject Property, it did so on the land governed by the 2017 Easement, thus making it a subcontractor to Weiss World. This is a stretch the Court cannot accept. There was no contract between Weiss World and MCCC with respect to any of the improvements rendered by Anderson, and the Court will not construe the Easement as the sort of contract contemplated by the statute. As explained above, MCCC had

an absolute right to access its subsurface estate through Weiss World's surface estate. The Easement between the parties—entered after protracted and adversarial litigation—only formalized and circumscribed MCCC's right of access. It does not, in any sense, make Anderson a subcontractor of MCCC. For this reason alone, a mechanics' lien is not appropriate, and Weiss World's Motion to Dismiss will be granted.

## IV.   CONCLUSION

For the reasons set forth above, Weiss World's Motion to Dismiss (ECF No. 7) will be granted. An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-2-22
Date